OPINION
{ ¶ 1} Defendant-appellant Johnny Flores appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of intimidation of a crime victim or witness in a criminal case and one count of gross sexual imposition. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE { ¶ 2} On September 15, 2005, the Richland County Grand Jury indicted appellant on one count of intimidation of a crime victim or witness in a criminal case in violation of R.C. 2921.04(B), a felony of the third degree, two counts of gross sexual imposition in violation of R.C.2907.05(A)(4), felonies of the third degree, one count of sexual imposition in violation of R.C. 2907.06(A)(4), a misdemeanor of the third degree, one count of aggravated menacing in violation of R.C.2903.21(A), a misdemeanor of the first degree, and one count of possession of drugs in violation of R.C. 2925.11(A), a minor misdemeanor. The counts involved appellant's daughter, Francesca, and two other victims.
{ ¶ 3} At his arraignment on September 27, 2005, appellant entered a plea of not guilty to the charges contained in the indictment.
{ ¶ 4} Thereafter, a jury trial commenced on December 15, 2005. The following testimony was adduced at trial.
{ ¶ 5} Angelina Flores, Francesca's older sister, testified at trial that in July of 2005, she noticed that Francesca was upset and asked her what was wrong. Based upon what Francesca told her, Angelina told Francesca that she needed to talk to their mother. The next day, Francesca, Angelina and their mother went down to the Lexington Police Station. When asked, Angelina testified that they had moved to Butler, Ohio probably in 2000. Butler is in Richland County.
{ ¶ 6} Gina Flores, appellant's wife and the mother of Angelina and Francesca, testified at trial that she moved with appellant and her daughters from Lexington to Butler in 2001. When asked how old her daughters were in 2001, Gina Flores testified that Francesca would have been around ten (10) years old and Angelina would have been approximately eleven (11) years old. When asked why she went to the Lexington Police Station to report the allegations of abuse when she lived in Butler, Gina testified that she went to Lexington since her brother worked there in the parks department.
{ ¶ 7} Gina further testified that she went to the police station after Francesca, who was upset and crying, came up to her and indicated that appellant had been touching her. Gina further testified that she was present when a recorded telephone call was made by Francesca to appellant on July 18, 2005. The following testimony was adduced when Gina was asked why she waited until the next day to go to the police station:
{ ¶ 8} "A. Because I thought it would be the easiest for the girls.
{ ¶ 9} "Q. In what sense?
{ ¶ 10} "A. Get up in the morning, go, deal with it, you know, not have to deal with it that night. I wanted to take them down to the police department without him knowing that we were getting up and leaving. It was something I wanted to deal with with the kids.
{ ¶ 11} "Q. So the idea of going in and confronting him and saying Chessie just told me you had been touching her was not a good option?
{ ¶ 12} "A. No.
{ ¶ 13} "Q. You'd rather wait until the next day. Is it fair to say you wanted to just kind of leave the house with the girls and make it look like you were leaving under normal circumstances?
{ ¶ 14} "A. Yes.
{ ¶ 15} "Q. Didn't the girls have camp that they were supposed to be going to?
{ ¶ 16} "A. Yes, they went to camp.
{ ¶ 17} "Q. So that kind of worked as a good cover to leave that day?
{ ¶ 18} "A. Yeah, we leave every day. They go to camp, I go to work.
{ ¶ 19} "Q. But instead of going to camp you went to the police department?
{ ¶ 20} "A. We went to camp first, then we left and went to the police department." Transcript at 171-172.
{ ¶ 21} At the trial in this matter, Francesca Flores, appellant's daughter, testified that she was fourteen (14) years old as of the time of trial and that she had been living in Butler, Ohio, which is in Richland County, since she moved there with her family in the fifth grade. Francesca testified that in July of 2005, after disclosing appellant's abuse of her to her mother, she went to the Lexington Police Station and gave a written statement to the police. In her written statement, Francesca stated that appellant had sexually harassed her, had undone her bra and put his hands up her shirt and had stuck his hands down her pants. Francesca further indicated in her written statement that appellant told her that if she did not "suck him" or let him lick her, she could not go anywhere or do anything. When asked, Francesca testified that the incidents started when she was ten years old and living in Butler.
{ ¶ 22} During her testimony, Francesca further testified that she had told a social worker that, when she was ten (10) years old, appellant had touched her breasts underneath her shirt more than ten times and her private area underneath her underwear once. According to Francesca, appellant got upset when she began showing interest in boys. When asked why she did not tell her mother right away, Francesca testified that she was afraid and did not think that anyone would believe her.
{ ¶ 23} Testimony also was adduced at trial regarding a telephone call that Francesca made to appellant. The telephone call was taped by Captain Larry Faith. During the telephone call, Francesca told appellant that she would not come home until he quit touching her and appellant, in response, threatened to break her jaw.
{ ¶ 24} At trial, Francesca further testified that the first time appellant grabbed her chest she thought it was an accident, but that as it kept happening, she believed otherwise. She further testified that appellant became bolder in his behavior towards her when she was in the middle of sixth grade and that the last time appellant touched her inappropriately was "[a]round a week before I said something down in Lexington court, like before I told my mom and sister." Transcript at 231. Francesca testified that she was thirteen (13) years old when she finally told her mother.
{ ¶ 25} The final witness to testify for the State at trial was Captain Larry Faith of the Richland County Sheriff's Department. Captain Faith testified that he was notified on July 18, 2005 of the allegations against appellant and that the subject of a controlled telephone call came up. According to the Captain, appellant was not in custody at the time the call was made and was unaware that the same was being recorded. The Captain further testified that the call was made from a house on Hull Road in Richland County using a cell phone. Captain Faith testified that he could not believe that a father would talk that way to his daughter. The taped telephone call was played for the jury.
{ ¶ 26} At the conclusion of the evidence and the end of deliberations, the jury, on December 21, 2005, with respect to Francesca Flores, found appellant guilty of intimidation of a crime victim, gross sexual imposition, and aggravated menacing. With respect to two other victims, appellant was found guilty of sexual imposition. Pursuant to a Sentencing Entry filed on December 29, 2005, appellant was sentenced to an aggregate prison sentence of four years.
{ ¶ 27} Appellant now raises the following assignment of error on appeal:
{ ¶ 28} "I. THE JURY'S VERDICT IN FINDING THE DEFENDANT-APPELLANT GUILTY OF INTIMIDATION OF A CRIME VICTIM OR WITNESS IN A CRIMINAL CASE AS DEFINED IN OHIO REVISED CODE SECTION 2921.04(B) WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE THUS HIS CONVICTION WAS IN VIOLATION OF ARTICLE I, [SECTION] 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
{ ¶ 29} "II. THE JURY'S VERDICT IN FINDING THE DEFENDANT-APPELLANT GUILTY OF GROSS SEXUAL IMPOSTITION [SIC] AS DEFINED IN OHIO REVISED CODE SECTION 2907.05 (A)(4) WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND BASED ON INSUFFIECIENT [SIC] EVIDENCE, THUS HIS CONVICTION WAS IN VIOLATION OF ARTICLE I, [SECTION] 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION."
 I, II { ¶ 30} Appellant, in his two assignments of error, challenges his convictions for intimidation of a crime victim or witness and gross sexual imposition. While appellant argues that his conviction for intimidation of a crime victim or witness is against the manifest weight of the evidence, he contends that his conviction for gross sexual imposition is against both the manifest weight and sufficiency of the evidence. We disagree.
{ ¶ 31} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
{ ¶ 32} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
{ ¶ 33} As is stated above, appellant argues that his conviction for intimidation of a crime victim or witness in violation of R.C.2921.04(B) was against the manifest weight of the evidence. R.C. 2921.04
states, in relevant part, as follows: "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness." A person acts knowingly when " * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
{ ¶ 34} With respect to his conviction for intimidation of a crime victim or witness, appellant specifically argues that he did not knowingly influence, intimidate or hinder Francesca, the victim herein, in filing or prosecuting criminal charges against him. Appellant notes that he did not know Francesca was calling him from the police station[1] and did not know she had made, or was going to make, allegations of wrongdoing against him.
{ ¶ 35} At the trial in this matter, Captain Larry Faith testified that, in order to pursue felony charges, a child such as Francesca has to file a report or complaint with his department or tell an authority figure such as a social worker or teacher who, in turn, is required to report the child's allegations. During the trial in this matter, the taped telephone call between Francesca and appellant was played for the jury. Testimony was adduced at trial that, during the call, Francesca told appellant that she was not coming home until he quit touching her. At trial, Francesca testified that, in response, appellant threatened to break her jaw, kick her ass, and made other threats and ordered her to get home. Appellant, during his trial testimony, admitted that he called Francesca a "fucking bitch" during the telephone call and threatened to bust her mouth and break her jaw if she talked to anyone, although he claimed such statements were taken out of context.
{ ¶ 36} Based on the foregoing, we find that the jury did not lose its way in convicting appellant of intimidation of a crime victim. As noted by appellee, "[f]rom the conversation between the Appellant and his daughter in the controlled phone call, it is clear that the Appellant was attempting to hinder her, as a victim, in reporting the abuse to an authority figure." While appellant testified at trial and claimed that the statements were taken out of context, the jury, as trier of fact, was in the best position to assess credibility. Clearly, the jury did not find appellant to be a credible witness.
{ ¶ 37} As is stated above, appellant also argues that his conviction for gross sexual imposition in violation of R.C. 2907.05(A)(4) is against the manifest weight and sufficiency of the evidence.
{ ¶ 38} Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4): "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * *
{ ¶ 39} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
{ ¶ 40} With respect to his conviction for gross sexual imposition, appellant specifically and only contends that appellee failed to prove beyond a reasonable doubt that the alleged incidents of sexual contact occurred between January 1, 2001 through August 26, 2004. The jury in the case sub judice specifically found appellant guilty of gross sexual imposition against Francesca between January 1, 2001 and August 26, 2004. Appellant notes that Francesca did not report the incident of sexual contact until July of 2005.
{ ¶ 41} However, at the trial in this matter, Francesca, whose date of birth is August 27, 1991, testified that appellant first began touching her around the time the family moved to Butler, Ohio, which was around when Francesca was ten years old. Gina Flores, appellant's wife, testified that the family moved to Butler in 2001, when Francesca was approximately ten. Francesca further testified that appellant's abuse of her continued until she told her mother and sister in July of 2005. According to Francesca, the last incident occurred a week before she went to the police station with her mother and sister. At the time, Francesca was thirteen (13) years old.
{ ¶ 42} In short, upon our review of the record, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found appellant guilty of gross sexual imposition beyond a reasonable doubt. We further find that the jury did not lose its way in convicting appellant of intimidation of a victim and gross sexual imposition.
{ ¶ 43} Based on the foregoing, appellant's two assignments of error are overruled.
{ ¶ 44} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.
Edwards, J. Hoffman, P.J. and Boggins, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.